

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF STATE COUNSEL
LITIGATION BUREAU

WRITER'S DIRECT DIAL: 212-416-8029

Via ECF

October 30, 2020

Hon. Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: The Roman Catholic Diocese of Brooklyn v. Cuomo, No. 20-cv-4844 (E.D.N.Y.)

Dear Judge Garaufis:

This Office represents Defendant Andrew M. Cuomo, in his official capacity as the Governor of the State of New York ("Governor Cuomo"), in the above-referenced action. I write pursuant to Your Honor's Individual Rule IV(A) to outline the arguments that Governor Cuomo intends to raise in his motion to dismiss Plaintiff's Complaint (ECF. No. 1, "Compl.") and to request a pre-motion conference. Governor Cuomo also requests an extension of his time to file an Answer (presently due on or about October 30, 2020), pending a decision on his motion.

Factual Background and Allegations

This case arises in the context of the global COVID-19 pandemic, during which "[i]n the past seven months, more than 479,000 people in New York have tested positive for COVID-19 and more than 25,000 people have died." ECF No. 32 at 1-2 (Memorandum and Order dated October 16, 2020 ("Opinion")).

Since the first reports of COVID-19 infections, Governor Cuomo has issued a series of executive orders in response to this pandemic. These orders are critical measures that have saved untold thousands of lives. See Geller v. De Blasio, 2020 WL 2520711, at *4 (S.D.N.Y. May 18, 2020) ("preventing in-person gatherings is crucial to any strategy of containment.").

On or about October 6, 2020, Governor Cuomo issued Executive Order 202.68 ("the EO") to direct the Department of Health to "determine areas in the State that require enhanced public health restrictions based upon cluster-based cases of COVID-19 at a level that compromises the State's containment of the virus." The EO further provides that "[c]ertain activities shall be restricted and any permitted activities, in all three zones below, shall be conducted in strict adherence to Department of Health guidance." Among its other provisions, the EO designated "red," "orange" and "yellow" zones based on the rates of positivity in COVID-19 tests. In these zones, the EO establishes specific restrictions applicable to schools, houses of worship and "non-essential

businesses" based on that zone's level of COVID-19 positivity. In relevant part, this Executive Order is designed to mitigate the significant risks of COVID-19 transmission posed by large gatherings of people that may take place in the context of services in houses of worship. *See* https://www.governor.ny.gov/news/no-20268-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

Plaintiff is a division of the Roman Catholic Church and heads 186 Catholic parishes and 210 Catholic churches in Brooklyn and Queens. Compl. ¶ 9. Plaintiff alleges that the EO's provisions limiting church services violate its rights under the Free Exercise Clause of the First Amendment, and "plainly and unconstitutionally target[ ] religious practice for at least three reasons" (*Id.,* ¶ 59), to wit, (1) the EO treats it less favorably than "secular businesses like grocery stories and pet food shops," (2) "the way the order operates in practice, including the numerous exceptions to the capacity limitations that apply to secular businesses, make clear that the order targets religious practice" because the EO's capacity limitations imposed "on Houses of Worship simply do not apply to non-religious institutions," and (3) Governor Cuomo's public statements "make clear that his order targets religious practice for disparate treatment and is neither neutral nor generally applicable." *Id.* Thus, Plaintiff argues, "[b]ecause the Initiative specifically targets the practice of religion, strict scrutiny applies." *Id.* As set forth below, Plaintiff's claims are mistaken, and the Complaint should be dismissed accordingly.

<u>The Complaint Fails to State a Claim</u>

Plaintiff fails to state a claim for violation of the Free Exercise Clause under the deferential standard of *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905). Relying on *Jacobson* and *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring), this Court denied Plaintiff's motion for a preliminary injunction and concluded that "although the EO establishes rules specific to religious gatherings, it does so because they are gatherings, not because they are religious." *See* Opinion at 19. In *Jacobson*, the Supreme Court held that "a community has the right to protect itself against an epidemic of disease which threatens its members," and, in such times, judicial scrutiny is reserved for a measure that "has no real or substantial relation to" the object of protecting the public or is "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." 197 U.S. at 27, 31. "The precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement." *S. Bay* at 1613 (Roberts, C.J., concurring). As cautioned by Justice Roberts, a court should be especially reluctant to impose its own judgment to set aside acts of elected officials acting in areas "fraught with medical and scientific uncertainties." *Id.*

Here, Plaintiff fails to plausibly allege that the limited and temporary restrictions[1] on some of its churches as set forth in the EO have no real or substantial relation to the object of protecting the public health. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (court need not accept plaintiff's legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). Indeed, church services and religious gatherings present a particularly high risk for the spread of COVID-19 infections. *See* Opinion at 13 ("Among the other problematic features of religious gatherings, congregants arrive and leave at the same time, physically greet each

---

[1] Governor Cuomo recently announced a "micro-cluster" initiative even more narrowly focused than the cluster initiative originally set forth in the EO. Based on developing data showing improvement in positivity rates in certain areas, Plaintiff's churches located in the red or orange zones in Queens and Brooklyn will soon be treated as "yellow zones" (there are currently no orange zones in New York City) and be able to conduct religious services at up to 50% capacity. *See, e.g.,* https://www.governor.ny.gov/news/governor-cuomo-details-covid-19-micro-cluster-metrics .

Hon. Nicholas G. Garaufis                                                    Page 3 of 3
October 30, 2020

other, sit and stand close together, share or pass objects, and sing or chant in a way that allows for airborne transmission of the virus"); *id.*, at 19 ("although the EO establishes rules specific to religious gatherings, it does so because they are gatherings, not because they are religious.") Thus, the EO's provisions concerning houses of worship are clearly related to protecting the public health.

Plaintiff will likely argue that in light of its own COVID mitigation efforts, the EO's capacity limitations in red and orange zones are unnecessary and will not have the intended effect of protecting the public health. However, such argument would not defeat a motion to dismiss. Indeed, *Jacobson* made clear that such scientific judgments must be left to elected officials. 197 U.S. at 30 ("It is no part of the function of a court" to decide what is "most effective for the protection of the public against disease."); *Phillips v. City of N.Y.*, 775 F.3d 538, 542 (2d Cir. 2015) (rejecting argument regarding "scientific evidence" against vaccines because "as *Jacobson* made clear, that is a determination for the legislature"). As this Court observed (Opinion at 14), "[s]ince *South Bay*, nearly every court to consider the issue has followed suit and applied a rational basis analysis to free exercise challenges to COVID-related restrictions on religious gatherings." *See also Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341 (7th Cir. 2020) (COVID-based 10-person limitation in houses of worship held subject to rational basis review and sustained).[2]

In any event, Executive Order 202.68 does not prohibit Plaintiff from conducting church services; rather, it imposes reasonable capacity restrictions in order to protect the public health during a pandemic. Thus, Plaintiff's claim fails and the Complaint should be dismissed.[3]

Thank your Honor for your time and consideration of this matter.

Respectfully submitted,

*Seth J. Farber*
Seth J. Farber
Assistant Attorney General
Seth.farber@ag.ny.gov
*Attorney for Governor Cuomo*

cc:     All counsel of record (via ECF)

---

[2] Although the Court did not foreclose the possibility that development of "future evidence" might support "strict scrutiny" analysis here (Opinion at 23), we respectfully submit that Plaintiff's claim fails even under that level of challenge for the reasons argued in our Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction (ECF No. 18) at 20-22 and the cases cited therein. In short, containing COVID-19 outbreaks is the most compelling of state interests, and the EO and the 'cluster initiative," especially as it becomes even more narrowly tailored to the precise locations of outbreaks and "hot spots," survives such scrutiny.

[3] Governor Cuomo also reserves the right to seek dismissal of the Complaint based on the Eleventh Amendment and/or mootness if the restrictions applicable to Plaintiff's churches are no longer in effect when briefing on the proposed motion occurs. Governor Cuomo announced that the rules regarding the cluster initiative be reevaluated within two weeks of the October 6th announcement, and he has already announced some easing of restrictions based upon available data. *See* https://www.governor.ny.gov/news/governor-cuomo-outlines-new-micro-cluster-strategy-tackle-covid-19-hot-spots-arise-fall. To the extent that the occupancy restrictions on Plaintiff's houses of worship are thereafter effectively rescinded, this lawsuit would be moot. *Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59-61 (2d Cir. 1992) (challenges to statutes are "routinely found moot" when statutes are amended). Further, any of Plaintiff's claims for declaratory relief or further injunctive relief would be barred by the Eleventh Amendment, because the exception of *Ex parte Young*, 209 U.S. 123 (1908), only applies to ongoing violations of federal law. *L.I. Pure Water Ltd. v. Cuomo*, 375 F. Supp. 3d 209, 216 (E.D.N.Y. 2019).