# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2020

(Motion argued: November 3, 2020        Decided:  November 9, 2020)

Docket Nos. 20-3572-cv; 20-3590-cv
_____

AGUDATH ISRAEL OF AMERICA, AGUDATH ISRAEL OF KEW GARDEN HILLS, AGUDATH ISRAEL OF MADISON, AGUDATH ISRAEL OF BAYSWATER, RABBI YISROEL REISMAN, RABBI MENACHEM FEIFER, STEVEN SAPHIRSTEIN,

*Plaintiffs-Appellants*,

v.

ANDREW M. CUOMO, GOVERNOR OF THE STATE OF NEW YORK, IN HIS OFFICIAL CAPACITY,

*Defendant-Appellee.*
_____

THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK,

*Plaintiff-Appellant*,

v.

GOVERNOR ANDREW M. CUOMO, IN HIS OFFICIAL CAPACITY,

*Defendant-Appellee.*
_____

CERTIFIED COPY ISSUED ON 11/18/2020

Before:

      LOHIER and PARK, *Circuit Judges*, and RAKOFF, *District Judge*.[*]

These tandem appeals arise from the ongoing COVID-19 pandemic. In response to a spike in cases, Appellee Governor Andrew Cuomo issued an executive order to limit further spread of the virus in certain COVID-19 hotspots. The Appellants each challenged the executive order as a violation of the Free Exercise Clause of the First Amendment. In each case, the United States District Court for the Eastern District of New York (Matsumoto, J.) (Garaufis, J.) denied the Appellants' motion for a preliminary injunction against the enforcement of the executive order. The Appellants now move for emergency injunctions pending appeal and to expedite their appeals. For the following reasons, the Appellants' motions for injunctions pending appeal are **DENIED**, and the motion to expedite their appeals is **GRANTED**.

Judge Park dissents from the denial of the motions for injunctions pending appeal.

                                          AVI SCHICK, Troutman Pepper Hamilton Sanders LLP, New York, NY (W. Alex Smith, Troutman Pepper Hamilton Sanders LLP, New York, NY, Misha Tseytlin, Troutman Pepper Hamilton Sanders LLP, Chicago, IL, *on the brief*), *for Agudath Israel of America, Agudath Israel of Kew Garden Hills, Agudath Israel of Madison, Agudath Israel of Bayswater, Rabbi Yisroel Reisman, Rabbi Menachem Feifer, Steven Saphirstein, Plaintiffs-Appellants in No. 20-3572-cv.*

                                          RANDY M. MASTRO, Gibson, Dunn & Crutcher LLP, New York, NY (Akiva Shapiro, William J. Moccia, Lee R. Crain, Gibson, Dunn & Crutcher LLP, New York, NY, *on the brief*), *for The Roman Catholic Diocese of Brooklyn, New York, Plaintiff-Appellant in No. 20-3590-cv.*

---

[*] Judge Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

| | JOSHUA M. PARKER, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General for the State of New York, New York, NY, *for Governor Andrew M. Cuomo, in his official capacity, Defendant-Appellee in Nos. 20-3572-cv and 20-3590-cv*. |

PER CURIAM:

## I

These appeals, which are being heard in tandem, arise from the ongoing COVID-19 pandemic. The pandemic has caused more than 25,000 deaths in New York State and more than 10,000 deaths in Brooklyn and Queens alone. In response to a recent spike in cases concentrated in parts of Brooklyn, Queens, and other areas, Governor Andrew Cuomo issued an emergency executive order to limit further spread of the virus in these COVID-19 "hotspots." No. 20 Civ. 4834 (KAM), doc. 12 ("Zucker Decl.") at 19; *see* No. 20 Civ. 4844 (NGG), doc. 20 ("Blog Decl.") at 20–24.

The executive order directs the New York State Department of Health to identify yellow, orange, and red "zones" based on the severity of outbreaks, and it imposes correspondingly severe restrictions on activity within each zone. *See* N.Y. Exec. Order No. 202.68. For example, the order

provides that in "red zones," which have "extraordinarily high rates of positivity" for COVID-19, No. 20 Civ. 4844 (NGG), doc. 31-1 ("Backenson Tr.") at 66, non-essential gatherings of any size must be cancelled, non-essential businesses must be closed, schools must be closed for in-person instruction, restaurants cannot seat any customers, and houses of worship may hold services but are subject to a capacity limit of 25 percent of their maximum occupancy or 10 people, whichever is fewer. The record on appeal also justifies, based on epidemiological evidence, the distinction the executive order draws between essential and non-essential businesses in these zones. *See, e.g.*, Backenson Tr. at 89–90. During the district court proceedings the Appellants did not rebut that distinction with any scientific evidence to the contrary.

The Appellants—Agudath Israel of America, Agudath Israel of Kew Garden Hills, Agudath Israel of Madison, Agudath Israel of Bayswater, Rabbi Yisroel Reisman, Rabbi Menachem Feifer, Steven Saphirstein (collectively, "Agudath Israel"), and The Roman Catholic Diocese of Brooklyn, New York (the "Diocese")—each challenged the executive order as a violation of the Free Exercise Clause of the First Amendment. In each case, the district court

denied the Appellants' motion for a preliminary injunction against the enforcement of the order. The Appellants now move for emergency injunctions pending appeal and to expedite their appeals, after an applications Judge on our Court denied their requests for an administrative stay, No. 20-3572, doc. 30; No. 20-3590, doc. 29. To be clear, in this opinion we resolve only these motions for emergency relief, not the Appellants' underlying appeals challenging the District Courts' refusals to provide preliminary injunctive relief.[1]

## II

### A

Preliminarily, we conclude that Agudath Israel did not "move first in the district court for" an order "granting an injunction while an appeal is pending" before filing with this Court its present motion for an injunction

---

[1] We originally resolved the motions that are the subject of this opinion in an order entered November 9, 2020. Except in unusual circumstances, this Court resolves such motions by order, not opinion. A dissent from an order does not necessarily require us to proceed by opinion. Nevertheless, our dissenting colleague has requested that we convert the original order and his dissent into opinions. In addition, shortly after our original order was issued and even before a merits panel could review the underlying appeals, the Appellants each filed an "Emergency Application for Writ of Injunction" with the Supreme Court. Given our dissenting colleague's request and the Appellants' recent filings, we reissue the order, with some modifications, and the accompanying dissent as opinions.

pending appeal. Fed. R. App. P. 8(a)(1)(C). Instead, Appellant moved for a preliminary injunction pending the district court's final judgment. In its briefs and at oral argument before this panel, moreover, Agudath Israel has not explained or otherwise justified its failure to comply with the straightforward requirement of Rule 8(a). Agudath Israel also has failed to demonstrate that "moving first in the district court would be impracticable," Fed. R. App. P. 8(a)(2)(A), or even futile, particularly in light of the fact that a full eleven days elapsed after the district court's ruling before Agudath Israel sought relief from this Court. We deny Agudath Israel's motion for these procedural reasons. *See Hirschfeld v. Bd. of Elections in N.Y.*, 984 F.2d 35, 38 (2d Cir. 1993).

B

We deny the Diocese's motion for an injunction pending appeal—and would deny the motion filed by Agudath Israel if it were properly before us—for the reasons that follow.

As an initial matter, an injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). To obtain an injunction from a district court, movants generally bear the burden

of showing that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Id.* at 20. To obtain a stay of a district court's order pending appeal, more is required, including a "strong showing that [the movant] is likely to succeed on the merits." *New York v. U.S. Dep't of Homeland Sec.*, 974 F.3d 210, 214 (2d Cir. 2020). The motions at issue here seek a remedy still more drastic than a stay: an injunction issued in the first instance by an appellate court. "Such a request demands a significantly higher justification than a request for a stay because, unlike a stay, an injunction does not simply suspend judicial alteration of the status quo but grants judicial intervention that has been withheld by lower courts." *Respect Maine PAC v. McKee*, 562 U.S. 996, 996 (2010) (quotation marks omitted).

"The Free Exercise Clause, which applies to the States under the Fourteenth Amendment, protects religious observers against unequal treatment and against laws that impose special disabilities on the basis of religious status." *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2254 (2020) (quotation marks omitted); *see Cent. Rabbinical Cong. of U.S. & Canada v.*

*N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014) ("[T]he Free Exercise Clause . . . protects the performance of (or abstention from) physical acts that constitute the free exercise of religion: assembling with others for a worship service, participating in sacramental use of bread and wine, proselytizing, abstaining from certain foods or certain modes of transportation.") (quotation marks omitted)). But the Free Exercise Clause "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability," *Emp't Div., Dep't of Human Res. v. Smith*, 494 U.S. 872, 879 (1990) (quotation marks omitted), "even if the law has the incidental effect of burdening a particular religious practice," *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

"A law burdening religious conduct that is *not* both neutral and generally applicable, however, is subject to strict scrutiny." *Cent. Rabbinical*, 763 F.3d at 193 (citing *Lukumi*, 508 U.S. at 531–32). "A law is not neutral if it is specifically directed at a religious practice." *Id.* (cleaned up). Similarly, a law is "not generally applicable if it is substantially underinclusive such that it regulates religious conduct while failing to regulate secular conduct that is at

least as harmful to the legitimate government interests purportedly justifying it." *Id.* at 197.

The Court fully understands the impact the executive order has had on houses of worship throughout the affected zones. Nevertheless, the Appellants cannot clear the high bar necessary to obtain an injunction pending appeal. The challenged executive order establishes zones based on the severity of the COVID-19 outbreaks in different parts of New York. Within each zone, the order subjects religious services to restrictions that are similar to or, indeed, *less severe than* those imposed on comparable secular gatherings. *See S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, *C.J.*, concurring) (denying emergency injunctive relief to houses of worship that were subject to similar or less severe restrictions than those applicable to comparable secular gatherings); *see also Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341, 342, 346–47 (7th Cir. 2020) (upholding an order that capped religious gatherings at ten people where the most comparable activities—those "that occur in auditoriums, such as concerts and movies"— had been banned completely); *cf. Commack Self-Serv. Kosher Meats, Inc. v. Hooker*, 680 F.3d 194, 210–11 (2d Cir. 2011) (holding that a

Kosher food labeling act was a neutral and generally applicable law subject to rational basis review because it applied to "food purchased by individuals of many different religious beliefs" and impacted consumers who purchased kosher products "for reasons unrelated to religious observance"). Gatherings at houses of worship in these zones, far from being relegated to a second tier, are favored over comparable secular gatherings.

Thus, while it is true that the challenged order burdens the Appellants' religious practices, the order is not "substantially underinclusive" given its greater or equal impact on schools, restaurants, and comparable secular public gatherings. *Cf.* No. 20-3590, doc. 20, Ex. L at 2 (Governor Cuomo criticizing the order's policy of "clos[ing] every school" as "a policy being cut by a hatchet," not "a scalpel"). To the contrary, the executive order "extend[s] well beyond isolated groups of religious adherents" to "encompass[] *both* secular and religious conduct." *Cent. Rabbinical*, 763 F.3d at 195.

Before the District Courts, the State also explained why gatherings at certain large commercial stores deemed essential are not meaningfully comparable to religious gatherings. Unlike shopping at large stores, an in-person religious service or ceremony necessarily involves a community of

adherents arriving and leaving at the same time and interacting and praying together over an extended period of time. The State provided unrebutted evidence that this type of purposeful interaction poses a higher risk of transmission of the coronavirus; the District Courts so found. *See* Zucker Decl. at 15; Blog Decl. at 16–20; No. 20 Civ. 4834 (KAM), doc. 18-1 at 62–63; No. 20 Civ. 4844, doc. 32 at 20 & n.10.

### III

Our dissenting colleague asserts that the executive order is subject to strict scrutiny because it violates the minimum requirement of neutrality. The fact that theaters, casinos, and gyms are more restricted than places of worship, the dissent reasons, "only highlights the fact that the order is not neutral towards religion." But this view is undermined by recent precedent, which makes clear that COVID-19 restrictions that treat places of worship on a par with or more favorably than comparable secular gatherings do not run afoul of the Free Exercise Clause. *See, e.g.*, *S. Bay*, 140 S. Ct. at 1613 (Roberts, C.J., concurring) (guidelines that "place[d] restrictions on places of worship" less severe than those on comparable gatherings "appear consistent with the Free Exercise Clause"); *see also Elim*, 962 F.3d at 347 (same).

The dissent attempts to distinguish *South Bay* as having been decided during the early stages of the pandemic while local governments were actively shaping their response to changing facts on the ground. But here, too, the executive order is a response to rapidly changing facts on the ground. For several months, New York's "limits and restrictions lessen[ed] and evolve[d] as the curve continue[d] to flatten," and the State's "limits and restrictions . . . increase[d]" only when "a review of the data indicate[d] a trend of increasing COVID-19 cases or spikes of cases in [the] cluster areas" targeted by the challenged executive order. Zucker Decl. at 14, 18–19. The pandemic is deadly and fast moving. Indeed, the dissent's assertion, only last week, that the seven-day average of deaths per day from COVID-19 has not exceeded twenty for months, *see* No. 20-3590, doc. 80 at 2, is no longer true today.[2] And the State recently informed us that, as of November 9, 2020, there are no longer any areas in New York designated as red zones. *See* No. 20-3590, doc. 78. The State's restrictions aim to keep pace with rapidly changing conditions.

---

[2] *See New York Covid Map and Case Count*, N.Y. Times (updated Nov. 16, 2020), https://www.nytimes.com/interactive/2020/us/new-york-coronavirus-cases.html.

In any event, *South Bay* did not draw a distinction between the pandemic in its early or late stage. Its central relevant facts exist in New York in November 2020 just as they existed in California in May 2020: There is no vaccine or known cure for COVID-19; the pandemic has killed hundreds of thousands of Americans; and "[b]ecause people may be infected but asymptomatic, they may unwittingly infect others." *S. Bay*, 140 S. Ct. at 1613 (Roberts, *C.J.*, concurring).

IV

As noted, in this opinion we address only the Appellants' motions for injunctions pending appeal and to expedite their appeals, not their underlying appeals challenging the district courts' refusals to provide preliminary injunctive relief. For the foregoing reasons, it is hereby ORDERED that the Appellants' motions for injunctions pending appeal are DENIED. Among other infirmities in their arguments, the Appellants have failed to meet the requisite standard for an injunction pending appeal. *See New York v. U.S. Dep't of Homeland Sec.*, 974 F.3d at 214. It is further ORDERED that the motion to expedite the appeals is GRANTED.

With respect to the underlying appeals, the parties have agreed to the following merits briefing schedule: Appellants' briefs are due November 17, 2020; Appellee's brief is due December 8, 2020; Appellants' reply briefs are due December 14, 2020, and the matter is to be calendared as early as the week of December 14, 2020.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

*Catherine O'Hagan Wolfe* (signature)

14